IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MATTHEW DAVID MILLER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Civil Action No. 15-1605 |
| v. | ) | |
| | ) | |
| NATIVE LINK CONSTRUCTION, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CONTI, Chief District Judge**

### I.   Introduction

This civil action arises from a business dispute principally between plaintiff Matthew David Miller ("plaintiff") and defendants Melinda Thompson-Walk ("Thompson-Walk"), her husband Mitchell Paul Walk ("Walk"), and Patrick L. Nolan ("Nolan"). Plaintiff claims that he, Thompson-Walk, and Nolan are equal one-third partners in a limited liability company known as Native Link Construction, LLC (hereafter, "NL Construction"). Walk served as an officer of NL Construction and was involved in its daily operations. After plaintiff experienced a falling out with Walk, Thompson-Walk, and Nolan, he filed this *pro se* civil action against NL Construction, Walk, Thompson-Walk, Nolan, and various other individuals and business entities, asserting claims for breach of contract, conversion, breach of fiduciary duties, and fraud. This court's subject matter jurisdiction is premised solely on diversity of citizenship pursuant to 28 U.S.C. §1332.

All of the named defendants in this action have filed motions to dismiss the amended complaint for failure to state a claim upon which relief can be granted or for lack of personal

1

jurisdiction. (*See* ECF Nos. 53, 56, 66, 69, and 71.) For the reasons set forth below, this court concludes that it lacks subject-matter jurisdiction over plaintiff's claims as they are currently pled; however, plaintiff will be given leave to file an amended pleading to the extent that he can cure the jurisdictional defects consistent with his Rule 11 obligations and the requirements of 28 U.S.C. §1332. The pending motions to dismiss will be denied without prejudice.

II. **Background Facts**

According to the operative pleading in this case (ECF No. 48), plaintiff, Thompson-Walk, and Nolan are equal one-third partners in NL Construction, a "member managed" limited liability company organized under the laws of Delaware on April 30, 2012 for the purposes of "perform[ing] installation, construction, training, engineering and other services related to the communications industry focusing on Native American clients." (Amended Compl. ¶17; *see id.* ¶¶2, 13, and Exhibit 1, ECF No. 48-1.) Thompson-Walk was named as one of NL Construction's partners in order for the company to qualify as "Native American owned," (*id.* ¶22), but Walk, her husband, "acted at all times as a partner in [her] place." (*Id.*) Thompson-Walk and Nolan had "minimal operational involvement" with NL Construction, and "all day to day operations and decisions" were handled by plaintiff and Walk. (*Id.* ¶ 23.)

Thompson-Walk and Nolan are also partners in a related entity known as "Native Link, LLC" ("Native Link"). (Amended Compl. ¶ 18.) Native Link is a Delaware limited liability company that "offers grant writing and consulting services for communications services and infrastructure to Native American governments." (*Id*. ¶¶ 3, 18.)

Subsequent to its formation on April 30, 2012, NL Construction opened a business account with "Chase Bank"[1] in Spokane, Washington. (Amended Compl. ¶ 25.) Kristen Janosick ("Janosick"), a small business specialist for Chase Bank, took possession of the original partnership agreement as well as NL Construction's certificate of formation and certain other documentation required by the bank. (*Id.*) Thereafter, Chase, through Janosick, provided payroll and other related services to NL Construction. (*Id.*)

At some point in or after October 2013, NL Construction and Native Link hired Pointguard Financial, PLLC ("Pointguard") and its agent, Nate Riggan ("Riggan"), to act as the CFO of both companies on an out-sourced basis. (Amended Compl. ¶34.) Plaintiff was not involved in this decision and was only informed about it after-the-fact. (*Id.*)

Plaintiff claims that, beginning in November 2013, Thompson-Walk and Nolan "began treating [him] as an employee rather than a partner and making decisions without his input or approval," even though "[plaintiff] was the only partner that was an active participant in the daily operations of [NL Construction]." (Amended Compl. ¶37.) "[A]t various and numerous times," Thompson-Walk, Nolan, and Walk "deposited funds from [NL Construction] invoices into Native Link, LLC and used those funds for Native Link, LLC obligations...." (*Id.* ¶39.) Native Link also invoiced clients for work on projects that had been contracted to and performed by NL Construction, again placing these funds into its own account. (*Id.*) In addition, Nolan allegedly used NL Construction's funds to pay for travel expenses that were unrelated to the company's business. (*Id.* ¶40.)

In early 2014, "Walk and the CFO prepared a forecast of revenues" for the year which "provided for commissions to Native Link, LLC for projects that it was not involved in and did

---

[1] Although the allegations in the body of the amended complaint refer to "Chase Bank" generically, the caption names both "JP Morgan Chase Bank NA" and "JP Morgan Chase & Co." as defendants.

not include projects where [plaintiff] performed engineering and installation services..." (*Id.* ¶ 38.) When plaintiff subsequently learned that the CFO's revised forecast would provide Native Link an even greater share of the profits from work performed by NL Construction, plaintiff "asked for the 2013 W2's and the quick books files to review," but he "has not been provided with any of the financial records that as a member of the LLC he is entitled to." (*Id*. ¶41.)

On February 4, 2014, plaintiff was advised by Walk that Native Link hired a new electrical engineer, whom plaintiff alleges was paid out of NL Construction's account. (Amended Compl. ¶43 and Ex. 40.) According to plaintiff, this development "placed Native Link, LLC in direct competition with [NL Construction] to the detriment of [plaintiff] and benefit of Melinda [Thompson-Walk], Mitchell Paul Walk, and Patrick Nolan." (Amended Compl. ¶43.) Thereafter, plaintiff discovered that Native Link was advertising for a construction manager, another position that plaintiff claims would be in "direct competition" with NL Construction. (*Id.*)

On February 15, 2014, plaintiff was notified that a board meeting would be held the following day to review documents pertaining to a loan that Native Link would be making to NL Construction in the amount of $250,000. (Amended Compl. ¶45 and Ex. 46.) Plaintiff was not provided any information about where the meeting would be held. (*Id.*) The following day, Walk emailed plaintiff, stating: "Attached is a document electing Melinda as [NL Construction's] new manager. Pat has signed this as well as Melinda already so please either sign or elect not to so we can move forward." (*Id.* at Ex. 47, ECF No. 48-47.) The attached document was a "Waiver and Consent to Actions in Lieu of the Annual Meeting of [NL Construction]." (*Id.* at Ex. 48, ECF No. 48-48.) Plaintiff asserts that, according to NL Construction's operating agreement, a unanimous vote of all three members was required "for all

4

but routine decisions." (Amended Compl. ¶46.) He refused to sign the document because he perceived that doing so would "severely harm his interest in [NL Construction] and [he had not been] provided the requested financial documents for review before approving." (*Id.*)

On February 19, 2014, plaintiff discovered that his authorization to draw funds from NL Construction's bank account at Chase bank had been revoked, which interfered with his ability to continue work on a particular construction project. (Amended Compl. ¶47.) That day, he spoke with Janosick, who advised plaintiff that she had revoked his access to the accounts. (*Id.* ¶48.) When plaintiff asked for the documentation authorizing her to do so, Janosick replied, "Ask Melinda, I don't have to tell you." (*Id.*)

On February 24, 2014, plaintiff discovered that his access to NL Construction's email account had been revoked and service to his cell phone had been cancelled. (Amended Compl. ¶49.) That same day, he received an email on his private Gmail account with an attached letter from NL Construction purporting to terminate his "employment" with the company. (*Id.* ¶49 and Exs. 50 and 51, ECF Nos. 48-50 and 48-51.) Plaintiff maintains that "[t]here is no merit to the allegations contained in the Letter and moreover[,] [plaintiff] was and continues to be a Member and not an employee of the company." (*Id.* ¶49.)

In March 2014, Thompson-Walk cancelled payments on the Verizon Wireless account that had been used by NL Construction and opened in plaintiff's name. (Amended Compl. ¶50.) Plaintiff avers that, as a result of Walk's actions, he is responsible to pay early termination charges. (*Id.*)

That same month, "Chase [B]ank returned guaranteed payment checks from [NL Construction] to the Plaintiff as unpaid for reason Z Fraud." (*Id.* ¶ 51.) When plaintiff subsequently attempted to obtain unemployment compensation benefits in Pennsylvania, he

5

discovered that Thompson-Walk, Janosick, and Chase Bank had "failed to file employment taxes in Pennsylvania and fraudulently listed [plaintiff's] address on his W2" as the Walks' Washington address. (*Id.* ¶52.) Thereafter, NL Construction contested payment of Pennsylvania unemployment compensation benefits. (*Id.*) Although plaintiff ultimately received a favorable ruling, the payment was allegedly delayed by eleven months because of NLC's actions. (*Id.*)

III.     **Procedural Background**

Based upon the foregoing alleged events, plaintiff commenced this litigation on December 8, 2015. His original complaint (ECF No. 1) named NL Construction, Native Link, Pointguard, JP Morgan Chase & Co., Thompson-Walk, Walk, Nolan, Riggan, and Janosick as defendants. On February 28, 2016, plaintiff filed his amended complaint (ECF No. 48), which named "JP Morgan Chase Bank NA" as an additional defendant.

Plaintiff's amended complaint is currently the operative pleading in this case. It sets forth seven claims under state law as follows: a claim against NL Construction, Thompson-Walk, Nolan, and Walk for breach of contract (Count 1); a claim against NL Construction, Thompson-Walk, Nolan, Walk, and Native Link for conversion (Count 2); a claim against NL Construction, Thompson-Walk, Nolan, and Walk for breach of fiduciary duty (Count 3); a claim against Pointguard and Riggan for breach of fiduciary duty (Count 4); a claim against NL Construction, Thompson-Walk, Nolan, Walk, Pointguard, Riggan, and Native Link for fraud (Count 5); a claim against JP Morgan Chase Bank, NA and Janosick for fraud (Count 6); and a claim against JP Morgan Chase Bank, NA and Janosick for breach of fiduciary duty (Count 7). Plaintiff seeks compensatory damages in excess of $2 million, as well as punitive damages, with respect to each of his seven claims.

The sole basis for this court's subject-matter jurisdiction as set forth in the amended complaint is diversity of citizenship. To that end, plaintiff avers that he is a resident of Allison Park, Allegheny County, Pennsylvania, and a "citizen of the United States." (Amended Compl. ¶1.) NL Construction and Native Link are both limited liability companies organized and existing under the laws of Delaware. (*Id.* ¶¶2, 3.) Pointguard is a professional limited liability company organized and existing under the laws of the State of Washington. (*Id.* ¶4.) JP Morgan Chase Bank, NA and JP Morgan Chase & Co. are corporations organized and existing under Delaware law. (*Id.* ¶5.) Nolan is a Canadian citizen who resides in Chateauguay, Quebec. (*Id.* ¶8.) Walk, Thompson-Walk, Riggan, and Janosick are all U.S. citizens who reside in Spokane County, Washington. (*Id.* ¶¶ 6, 7, 8, 9.)

All the named defendants in this case moved to dismiss the amended complaint (*see* ECF Nos. 53, 56, 66, 69, and 71). In general, these motions assert that plaintiff failed to state a claim upon which relief can be granted or that this court lacks personal jurisdiction over them. *See* Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

**IV.     Standard of Review**

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, they have a continuing obligation to assess their subject- matter jurisdiction and can dismiss a suit *sua sponte* for lack of subject-matter jurisdiction at any stage in the proceeding. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "In instances where an issue of subject-matter jurisdiction is coupled with an issue of personal jurisdiction, courts should dispose of the issue of subject-matter jurisdiction before engaging with the question of

personal jurisdiction unless compelling circumstances dictate otherwise." *Dickson v. Noble House Hotels & Resorts,* Civil Action No. 14-1778, 2014 WL 4493725, at *3 (E.D. Pa. Sept. 10, 2014) (citing *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 587-88 (1999)).

Jurisdictional challenges may be treated as either "facial" or as "factual." *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014). "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Id.* at 358. "Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint." *Id.* (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 889-92 (3d Cir.1977)). Thus, "a facial attack 'contests the sufficiency of the pleadings….'" *Id.* (quoting *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)).

When analyzing a facial attack on subject-matter jurisdiction, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *In re Schering Plough Corp.*, 678 F.3d at 243 (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)) (internal quotation marks omitted). "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Constitution Party of Pa.,* 757 F.3d at 358 (citing *In re Schering Plough Corp.*, 678 F.3d at 243). "The person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation."

*Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

V.	**Discussion**

When the foregoing standard of review is applied to plaintiff's amended complaint and appended exhibits, it becomes apparent that subject-matter jurisdiction is lacking. Here, plaintiff's various claims arise solely under state law. Plaintiff relied exclusively on diversity of citizenship under 28 U.S.C. §1332(a) to provide the requisite jurisdictional basis for this lawsuit. (*See* Amended Compl. ¶11.) Section 1332(a)(1) gives district courts original jurisdiction to hear cases where the matter in controversy, exclusive of interests and costs, exceeds the value of seventy-five thousand dollars ($75,000) and is between citizens of different states. However, diversity of citizenship jurisdiction requires complete diversity as between the two sides in a dispute – that is, it "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *see Bumberger v. Ins. Co. of N. Am.*, 952 F.2d 764, 767 (3d Cir. 1991) ("[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff.") (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (alteration and emphasis in original)).

In this case, however, complete diversity is lacking because plaintiff and defendant NL Construction are citizens of the same state. It is clear from the face of plaintiff's pleading that he claims to be a partner/member of NL Construction.[2] For purposes of diversity jurisdiction, a

---

[2] In the amended complaint, plaintiff alleges that he is a "resident of Allison Park, Allegheny County, Pennsylvania, a citizen of the United States, *and a member of Native Link Construction, LLC*." (Amended Compl. ¶1 (emphasis added).) Plaintiff's status as a member of NL Construction is reiterated elsewhere in the amended complaint and accompanying exhibits. (*See* Amended Compl. ¶ 13 (alleging that plaintiff formed NL construction "as a member managed LLC ... with 3 equal partners[:] Matthew David Miller, Melinda Thompson Walk, and Patrick L. Nolan."); *id*. ¶ 25 (referencing Exhibit 8, "Partnership Agreement"); *id*. ¶ 37 (alleging that plaintiff "was the only partner that

9

limited liability company is considered to be a citizen of every state in which its members are citizens. *See Americold Realty Trust v. Conagra Foods, Inc*., ⸺ U.S. ⸺, 136 S. Ct. 1012, 1015 (2016) (discussing the "oft-repeated rule" that, for purposes of determining diversity jurisdiction, the citizenship of an unincorporated entity depends upon the citizenship of its members)*; Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) ("[T]he citizenship of an LLC is determined by the citizenship of its members."); *Johnson v. Columbia Prop. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (court joining with its "sister circuits" and holding that "an LLC is a citizen of every state of which its owners/members are citizens"); *Vargas v. Family Dollar Stores of Pennsylvania LLC*, No. CV 16-1793, 2016 WL 3355822, at *2 (E.D. Pa. June 17, 2016)("[T]he Court must look to the citizenship of the members of the LLC in order to determine citizenship of the LLC itself."). Because plaintiff and NL Construction are deemed to be citizens of the same state for purposes of 28 U.S.C. §1332(a), the requisite diversity is lacking. *See Hai Yang Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443, 450-51 (S.D.N.Y. 2014) (noting that "in general, a plaintiff who is a member of an LLC cannot bring a diversity action against the LLC") (citing *Keith v. Black Diamond Advisors, Inc*., 48 F. Supp. 2d 326, 330 (S.D.N.Y.1999)).

Pursuant to Rule 21of the Federal Rules of Civil Procedure, a court may exercise its discretion to drop a nondiverse party in order to preserve diversity jurisdiction, provided that the nondiverse party is not "indispensable" under Rule 19(b). *See Zambelli Fireworks Mfg. Co., Inc.,* 592 F.2d at 421; *see also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any

---

was an active participant in the daily operations" of NL Construction); *id*. ¶49 (alleging that plaintiff "was and continues to be a Member and not an employee" of NL Construction); *id*. ¶54 (alleging that the NL Construction Partnership Agreement "is a binding legal instrument that creates mandatory obligations on the part of Native Link Construction, LLC, Melinda Walk and Patrick Nolan in favor of Mr. Miller."); *see* Amended Compl. Ex. 8, ECF No. 48-8, ¶ 1 (identifying plaintiff as a "partner"); *id*. ¶ 3 (indicating that the "partnership will begin on May 1, 2012" and "will continue indefinitely until it is ended by the terms of this agreement"); *id*. ¶¶ 13-15 (indicating that the partners may "unanimously agree" to end the partnership, and setting forth procedures upon a partner's "withdrawal" or death).)

time, on just terms, add or drop a party."). However, the current state of the record does not permit the court to make a definitive determination in this regard. At the very least, further briefing would be required.

Even if the court were in a position to determine that NL Construction is a dispensable party, the amended complaint would not pass jurisdictional muster because plaintiff's averments fail to properly allege the citizenship of most of the other named parties, including plaintiff himself. For purposes of diversity jurisdiction, a natural person is deemed to be a citizen of the state where he is domiciled. *Swiger v. Allegheny Energy, Inc.,* 540 F.3d 179, 182 (3d Cir.2008) (citing *Gilbert v. David,* 235 U.S. 561, 569 (1915)). To be domiciled in a state, a person must reside there and intend to remain indefinitely; therefore, allegations about a party's "residency," as opposed to "citizenship" or "domicile" are "jurisdictionally inadequate in [a] diversity of citizenship case." *McNair v. Synapse Group Inc.*, 672 F.3d 213, 219 n.4 (3d Cir. 2012) (citing *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972) ("[M]ere residency in a state is insufficient for purposes of diversity [of citizenship].")); *see Odell v. One W. Bank, NA*, No. CV 16-0984, 2016 WL 3551621, at *1 (E.D. Pa. June 30, 2016); *Dickson v. Noble House Hotels & Resorts,* Civil Action No. 14-1778, 2014 WL 4493725, at *3 n.1 (E.D. Pa. Sept. 10, 2014); *Grabowski v. Liberty Mut. Fire Ins. Co.*, No. CIV.A. 3:14-815, 2014 WL 1745893, at *1 (M.D. Pa. May 1, 2014). In the amended complaint, however, plaintiff avers only that he is a "resident of Allison Park, Allegheny County, Pennsylvania" and a "citizen of the United States." (Amended Compl. ¶1.) Similarly, with respect to the defendants who are natural persons, plaintiff alleges only their place of residence and the fact that they are United States' citizens. (*Id.* ¶¶ 6-10.) These averments of residency and general United States citizenship are

insufficient to establish that plaintiff and the various individual defendants are citizens of different *states*.

With respect to defendants JP Morgan Chase Bank, NA and JP Morgan Chase & Co., the amended complaint alleges that these entities are corporations organized and existing under the laws of the State of Delaware. (Amended Compl. ¶4.) A corporation is deemed to be a citizen of "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. §1332(c)(1). "A corporation may only have one principal place of business, and proper invocation of diversity jurisdiction requires that the plaintiff allege where a corporation has 'its principal place of business.'" *Grabowski*, 2014 WL 1745893, at *2 (citing *S. Freedman & Co., Inc. v. Raab*, 180 F. App'x 316, 320 (3d Cir. 2006) (affirming the district court's dismissal of a complaint that alleged the location where the plaintiff corporation maintained "a principal place of business," rather than "its principal place of business")). "A corporation's principal place of business is its 'nerve center,' that is, the place 'where a corporation's officers direct, control, and coordinate the corporation's activities.'" *Id.* (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181, 1192 (2010)). No averments are included in the amended complaint about the principal place of business for either JP Morgan Chase Bank NA or JP Morgan Chase & Co. JP Morgan Chase Bank NA may be a national bank as indicated in its name, i.e. "NA"; if so, its citizenship for diversity purposes is "the state in which its main office, as designated in its articles of association, is located." 13F CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3627 at 169 (3d ed. 2009). Accordingly, the amended complaint is jurisdictionally deficient in this respect as well.

Finally, with respect to Pointguard, plaintiff avers that Pointguard "is a professional limited liability company organized and existing under the laws of the State of Washington...." (Amended Compl. ¶4.) As with NL Construction, the citizenship of Pointguard depends upon the citizenship of its members because it is alleged to be a limited liability company. *See Zambelli Fireworks Mfg. Co.,* 592 F.3d at 420 (stating that "'the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be' to determine the citizenship of the LLC") (quoting *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003)). Here, however, the amended complaint contains no averments concerning the membership of Pointguard or the citizenship of its members.

The inability to identify the citizenship of all members is not necessarily a fatal jurisdictional defect at the pleading stage. In *Lincoln Benefit Life Co. v. AEI Life, LLC,* 800 F.3d 99 (3d Cir. 2015), the United States Court of Appeals for the Third Circuit held that a plaintiff need not affirmatively allege the citizenship of each member of an unincorporated association in a complaint in cases where that information is not reasonably ascertainable. 800 F.3d at 102. "[I]f the plaintiff is able to allege in good faith, after a reasonable attempt to determine the identities of the members of the association, that it is diverse from all of those members, its complaint will survive a facial challenge to subject-matter jurisdiction." *Id*. The court explained its holding as follows:

> A State X plaintiff may therefore survive a facial challenge by alleging that none of the defendant association's members are citizens of State X. [ ] Significantly, however, the plaintiff is permitted to make such an allegation even if it is not certain of the association's membership. In order to satisfy its obligations under Rule 11, a party must conduct a reasonable inquiry into the facts alleged in its pleadings.[ ] Thus, before alleging that none of an unincorporated association's members are citizens of a particular state, a plaintiff should consult the sources at its disposal, including court filings and other public records. If, after this inquiry, the plaintiff has no reason to believe that any of the association's members share its state of citizenship, it may allege complete diversity in good faith. The

13

unincorporated association, which is in the best position to ascertain its own membership, may then mount a factual challenge by identifying any member who destroys diversity.[ ]

*Id.* at 107-08 (internal footnotes omitted).

In light of the court's ruling in *Lincoln Benefit Life Co.*, it may not be necessary for plaintiff to affirmatively allege the citizenship of each member of Pointguard. For example, the court in *Lincoln Benefit* essentially construed the complaint as including averments that: "(1) the LLC defendants [had] connections to New York and Delaware; (2) counsel for [the plaintiff] conducted a reasonable inquiry to determine the membership of the LLC defendants but found nothing of value; and (3) counsel for [the plaintiff] found no connection between the LLC defendants and Nebraska[, plaintiff's state of citizenship]." 800 F.3d at 110. The court found this information sufficient to demonstrate that the plaintiff had a good faith basis for alleging that the LLC defendants' members were *not* citizens of the plaintiff's own state of citizenship.

In the instant case, however, the operative pleading provides no basis from which this court can infer that plaintiff conducted the requisite good faith inquiry into the citizenship of Pointguard's members, and plaintiff did not even pled "citizenship." Instead, plaintiff avers only that Pointguard "is a professional limited liability company organized and existing under the laws of the State of Washington...." (Amended Compl. ¶4.) Because the citizenship of a limited liability company depends upon the citizenship of its members, its place of organization is of no jurisdictional moment. *See Lincoln Benefit Life Co.,* 800 F.3d at 105 (observing that, for purposes of the diversity statute, "[t]he state of organization and the principal place of business of an unincorporated association are legally irrelevant")(footnoted omitted).

In sum, the amended complaint contains numerous jurisdictional deficiencies which presently preclude this court from exercising subject-matter jurisdiction over this case. Given

the current procedural posture of this case, the most prudent course of action is to dismiss the complaint for lack of subject-matter jurisdiction but without prejudice to permit plaintiff to amend his complaint, to the extent he can do so consistent with the mandates of Federal Rule of Civil Procedure 11 and the strictures of 28 U.S.C. §1332(a). The pending motions to dismiss will be denied as moot, but without prejudice in the event plaintiff files an amended complaint. Plaintiff may file an amended complaint within twenty days of the entry of the order accompanying this opinion.

## VI. Conclusion

Based upon the foregoing reasons, the amended complaint will be dismissed without prejudice, and the pending motions to dismiss will be denied as moot. Plaintiff will have twenty days within which to file an amended complaint, to the extent he can do so consistent with the jurisdictional requirements of 28 U.S.C. §1332 and the mandates of Federal Rule of Civil Procedure 11. Plaintiff's failure to file an amended complaint within the foregoing timeframe will result in this case being closed without further order of court.

An appropriate order follows.

Dated: September 8, 2016                  /s/ Joy Flowers Conti
                                                                        Joy Flowers Conti
                                                                        Chief United States District Judge