IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**MATTHEW DAVID MILLER**,                )
                                         )        Civil Action No. 15-1605
           PLAINTIFF,                    )
                                         )
**V.**                                   )
                                         )
**MELINDA THOMPSON-WALK,**               )
**MITCHELL PAUL WALK,**                  )
AND **PATRICK L. NOLAN**,                )
                                         )
           DEFENDANTS.                   )
                                         )

## MEMORANDUM OPINION

Pending before the court is a second motion for sanctions (ECF No. 174) filed by plaintiff

Matthew David Miller ("Miller" or "plaintiff"). Defendants Patrick L. Nolan ("Nolan"),

Melinda Thompson[1] ("Thompson") and Mitchell Paul Walk ("Walk" and collectively with

Nolan and Thompson "defendants") filed responses in opposition to the motion (ECF Nos. 177,

178).[2] The court appointed Susan Ardisson, Esquire ("Ardisson"), as special master in this

matter for the purposes of submitting a Report and Recommendation ("R&R") with respect to

the motion (ECF No. 182). On January 22, 2019, the special master filed a thorough R&R (ECF

No. 183). On February 12, 2019, defendants Nolan and Thompson filed objections to the R&R

(ECF Nos. 185, 186) through their attorney, Jeffrey T. Morris ("Morris").

On April 18, 2019, the court held a hearing and argument on the objections and the

matters are ripe for disposition. Walk attended the hearing in person and confirmed that he had

no objections to the R&R. Morris represented to the court that Thompson and Nolan did not

---

[1] Thompson was previously named Melinda Thompson-Walk.
[2] The case was originally captioned *Miller v. Native Link Construction, LLC, et al*. The only remaining defendants are Thompson, Walk and Nolan. (ECF No. 100).

need to participate in the hearing but were available by telephone if the court had any questions for them.

Procedural History

The underlying claims involve the dissolution of a small business the various parties founded and operated. *See* Opinion dated August 17, 2017 (ECF No. 99). The litigation was delayed by discovery problems.

On November 9, 2017, the parties submitted a joint Rule 26(f) report (ECF No. 107). The Rule 26(f) report stated, in relevant part: (1) the parties were seeking electronically stored information ("ESI"); (2) metadata would be relevant to "the contract documents"; (3) all ESI would be produced in "native format"; and (4) there were "[n]o unresolved issues" pertaining to ESI preservation. (ECF No. 107). In response to the order to "Identify all outstanding issues or disputes concerning ESI," the parties stated: "None." (ECF No. 107).

The special master's R&R accurately recited the chronology of the discovery disputes at issue:

> On January 29, 2018, Plaintiff served on Defendants Melinda Thompson-Walk, Paul Walk and Patrick Nolan his First Set of Interrogatories and Request for Documents ("Document Requests"). Plaintiff's Documents Requests set forth 22 requests, including requests for Native Link, LLC and NL Construction email and other related accounts, QuickBooks files, bank statements, minutes and documents relating to these companies, and all documents relating to Defendants' allegations and defenses contained in their answers to Plaintiff's Second Amended Complaint.
>
> On April 10, 2018, Plaintiff filed a motion to compel discovery against Defendants Melinda Thompson-Walk, Paul Walk and Patrick Nolan for among other matters Defendants' failure to produce the documents, including ESI, requested by Plaintiff. (Dkt. No. 130) On April 19, 2018, the Court denied without prejudice Plaintiff's motion to compel and granted Defendants' motion for an extension of time to complete discovery to June 15, 2018. (Dkt. No. 139).

On May 4, 2018, Plaintiff filed a second motion to compel discovery because Defendants had not responded to the January 29, 2018 interrogatories and document requests. On June 6, 2018, the Court granted Plaintiff's motion to compel and ordered the Defendants to provide Plaintiff with the following for the period of May 1, 2012 through December 31, 2016 (the "relevant period"):

1) all emails related to Native Link, LLC and NL Construction (the "relevant companies");
2) identification of the location where any emails with respect to the relevant companies were maintained or stored, or are presently maintained or stored, including an indication whether the emails were or are located on a business or personal computer of defendants and the identity of the email service provider for any email addresses used with respect to each of the relevant companies, including personal email addresses used with respect to each of the relevant companies;
3) with respect to each of the relevant companies, copies of all QuickBooks or similar program files, bank statements, check and documents indicating to whom and for what purpose payment was made, invoices, contracts, deposit slips and any documents indicating from whom the payment was received, and purchase orders;
4) copies of all minutes of all meetings of each of the relevant companies;
5) tax returns for each of the relevant companies;
6) copies of all letters referenced by defendants in their answers to the second amended complaint (ECF Nos 104, 105), responses to requests for production, and answers to interrogatories; and
7) a detailed explanation of the $10,000.00 wire transfer to the IOLTA account of Darlene Frances and Brenda Etienne, including information with respect to the purpose of and basis for payment, and copies of any documents with respect to that transfer.

The Court ordered Defendants to provide Plaintiff with the information, documents and e- discovery identified above by no later than June 19, 2018. Hereinafter referred to as the "June 6, 2018 Order."

After the Court's June 6, 2018 Order, one of the electronic documents produced by Defendants was a document entitled "OWNER MEETING NATIVE LINK, LLC" which according to Defendant Paul Walk were [sic] minutes of a meeting that allegedly took place on November 8, 2012, at which he was present. (Dkt. No. 178-1). The document recites that a purported meeting was called to ratify the ownership interest in NL Construction. It recited that the current ownership structure was Native Link LLC and FatPipe Communications, and the proposed ownership structure was Matthew Miller, Melinda Thompson and Patrick Nolan, each with a 33% interest. According to the document, the following resolution was "denied": RESOLVED, no change of Membership interest shall be approved at this time." (Exhibit A).

Ignoring for the moment the many inconsistencies in this fabricated document, both internally and regarding the individual membership in NL Construction (which has been admitted), Plaintiff pointed out that a review of the

metadata associated with the document revealed that the document was not created on or about November 8, 2012, but actually was created nearly five and half years later on June 26, 2018, just 20 days after the June 6, 2018 Order. (Exhibit B, Screenshot of Document Metadata for Exhibit A)

On July 16, 2018, Plaintiff filed a motion for sanctions under Federal Rule of Civil Procedure 37 for Defendants' failure to comply with the Court's Orders, including the June 6, 2018 Order, and Defendants' failure to preserve electronically stored documents. (Dkt. No. 155). On August 22, 2018, the Court granted in part and denied in part Plaintiff's motion for sanctions. Specifically, the Court ruled that "defendants shall not be able to offer as evidence, rely on, refer to or offer as a defense contentions with respect to documents and categories of documents, including electronically stored information ("ESI") that was not produced to plaintiff in response to his discovery requests…." The Court further ruled that Plaintiff could depose the Defendants for an additional four hours "with respect to the subject of his motion to compel, including ESI" and extended discovery until October 23, 2018. The order directed that "the motion for sanctions is otherwise denied without prejudice to refile the motion after plaintiff has had the opportunity to conduct the defendants' depositions" and set a status conference for October 23, 2018. Hereinafter referred to as the "August 22, 2018 Order." (Dkt. No. 165)

A status conference was held on October 23, 2018, during which the Court ordered the following, as set forth in the Minute Entry filed on October 24, 2018, related to the discovery requested by Plaintiff:

1) counsel for defendants shall obtain login and passwords for defendants' Gmail accounts for defendants' counsel to review to determine whether there are any other emails responsive to discovery that were not produced with respect to the Native Link companies, and if counsel is unable to do so, counsel shall engage a forensic expert, and shall produce responsive emails by 11/6/2018;
2) with respect to defendants' devices, including laptop computers, personal computers or other computers used by defendants with respect to the Native Link companies, defendants' counsel is to engage a forensic expert to review the devices to determine if there are any further documents or ESI, including but not limited to QuickBooks files and emails that are responsive to discovery requests that have not been produced, and to produce any responsive documents and ESI by 11/6/2018.

The Court further directed that, after reviewing newly produced documents by the Defendants, Plaintiff could move to re-depose the Defendants, but Plaintiff would waive the right to object to Defendants' use of the additional documents/ESI as provided for in the August 22, 2018 Order. The Court set a status conference for November 27, 2018 and ordered the parties to file any discovery motions prior to the November 27, 2018 status conference.

On October 31, 2018, the Court held another status conference at the request of counsel for Defendants Melinda Thompson-Walk and Patrick Nolan seeking clarification of the Court's October 24, 2018 Minute Entry. The Court's Minute Entry of proceedings provides that Mr. Morris advised the Court that "certain

devices belonging to or used by Ms. Thompson-Walk and Mr. Nolan are no longer in their custody or were destroyed." The Court directed that if the devices could not be forensically reviewed that the Defendants must provide sworn affidavits by "individuals with specifics explaining the how, when and why with respect to lost, destroyed or transferred devices and ESI by 11/06/2018." Mr. Freeman, counsel for Defendant Paul Walk, advised the Court that he had performed a search of Walk's devices and that "no responsive documents or ESI were contained therein other than emails already made available to plaintiff."

On November 5, 2018, Defendant Melinda Thompson-Walk filed an affidavit with the Court stating the following:

> From February of 2011 through June of 2015 I utilized a company-owned computer which contracted a virus that rendered it completely nonoperational in or around June of 2015….. Because it was completely dysfunctional and the hard drive could not be accessed I donated it to Goodwill on or about September of 2015…. Commencing on or about September 2015 I began utilizing the laptop computer belonging to my daughter, Micah, for Native Link company business purposes until on or about December 2016 when the computer crashed and could no longer be turned on nor could the data be accessed. (Dkt. No. 170)

Defendant Melinda Thompson-Walk's daughter, Micah Donal Walk, also submitted an affidavit on November 5, 2018, stating that her mother used her Compaq computer and "logged on to the remote access given by her accountant to send over accountant's copies to Point Guard Financial…" Ms. Walk stated that she did not have any QuickBooks or Native Link files stored on her computer. Ms. Walk further stated that:

> my laptop computer started giving me problems …in 2014. The problems that I was encountering with my laptop was it was having difficulty starting and I had to reboot the computer several times in order for it to operate properly.  By the time I moved out of Nine Mile Falls Washington the computer had completely stopped operating. Consequently, I donated my laptop computer to Earth Works Recycling….in June of 2017…. (Dkt. No. 171)

R&R at 4-9 (ECF No. 183).

On November 14, 2018, Nolan's counsel asked to withdraw his representation because Nolan was "uncooperative with counsel particularly concerning compliance with this court's most recent discovery order pertaining to ESI related issues."  (ECF No. 172 ¶ 6).  Plaintiff filed a second motion for sanctions on November 15, 2018.  On December 4, 2018, the court

appointed Ardisson as special master.  Of note, the appointment order (ECF No. 182), required that any objections to an R&R be filed "no later than fourteen (14) days from the time the Special Master's report and recommendation are submitted."  On January 22, 2019, the special master filed her report (ECF No. 183).  The objections of Nolan and Thompson (ECF Nos. 185, 186) were filed on February 12, 2019 (21 days later).

Factual Background

The special master made detailed factual findings regarding each defendant.  Defendants' objections did not contest the specific factual findings made by the special master.  At the hearing, counsel for Thompson and Nolan conceded that they violated the court's discovery orders; their discovery responses were delayed; and their negligence/carelessness resulted in a loss of data.  He, however, did not admit that his clients engaged in the intentional destruction of evidence.

1.  Walk

Walk had the most minimal role and is the least culpable of the three defendants with respect to these discovery disputes.  Walk was not an owner of NL Construction or Native Link. Walk's employment as vice president terminated in April 2014, when he separated from Thompson, his then-wife.  Walk served as an independent contractor for one project in 2015 and his access to the nativelink.net account was terminated some time in 2016.

Walk's Apple laptop computer crashed in August 2015.  He took it for repair, which (for unexplained reasons) required a complete cleaning of the hard drive.  All Native Link files were lost.  Walk did not provide documentation about the repair work or engage a forensic expert to examine the Apple laptop to corroborate these assertions, as ordered by the court.

In response to the June 6, 2018 order, Walk produced approximately 10,000 emails from his gmail account.  Miller stated that he is now satisfied with Walk's production.  Walk gave no explanation why it took months, a deposition and multiple court orders – including giving Miller direct access to the gmail account --  before these emails were produced.

Walk, Thompson and Nolan all collaborated to create and produce a document that purported to be the minutes of a November 8, 2012 owners' meeting.  Instead of complying with the court's June 6, 2018 order, Walk, Thompson and Nolan held a telephone conference at which Walk was asked to produce their recollection of a November 2012 owners' meeting.  Walk prepared the document and sent it to Thompson for her signature.  Thompson returned it to Walk, dated November 2012, and signed it on behalf of Nolan.  Walk Affidavit, ECF No. 178-1.  Walk produced that document to Miller.  Those minutes involve a central issue in the litigation; namely, whether Miller has a one-third membership in NL Construction.  The metadata establishes that the document was created on June 26, 2018 (approximately three weeks after the court's June 6, 2018 order) and was back-dated to make it appear contemporaneous.  Thompson and Nolan admitted the document was "prepared after the fact."  ECF No. 177.

The special master recommended that the appropriate sanction on Walk is an award of deposition costs, travel and other deposition-related expenses incurred by Miller to take Walk's deposition, and that the digital copy of Walk's gmail account which was provided to Miller on a hard drive be provided at Walk's expense.  The special master recommended that Walk not be sanctioned for failing to preserve emails from the nativelink.net account because he had no ability to access the nativelink.net account in 2018.  With respect to the back-dated meeting minutes, the special master recommended allowing Miller to cross-examine all defendants at trial about the creation of that document, but only documents produced to Miller could be introduced regarding the back-dated document.

2.  Thompson

Thompson is one of the three owners/members of NL Construction and its managing member.  She is an owner/member of Native Link and was the person who interacted with its accountants and provided the information for them to prepare financial statements.  Thompson was in charge of the companies and had the ability (and duty) to preserve evidence.  The special master found that Thompson violated court orders and failed to preserve evidence in numerous ways.

a.  Fabricating a key meeting minute

As explained above, she collaborated with Walk and Nolan to create and produce a document that purported to be the minutes of a November 8, 2012 owners' meeting.  Thompson signed and backdated the document, which addressed a key issue in the case, without disclosing that the document had been created in June 2018.

b.  Allowing emails to be permanently deleted

Thompson failed to preserve, produce and prevent permanent destruction of the company's email files.  On August 12, 2016, Garrant Consulting, LLC ("Garrant"), the service provider for the Native Link website and email domain, terminated the company's email accounts for non-payment.  Garrant advised Thompson and Walk that it would keep a copy of the files for thirty days, but on September 12, 2016, they would be permanently removed.  In fact, Garrant actually kept a backup on the server until September 2017.  Thompson failed to act and allowed the records to be destroyed.  She (and counsel) did not flag the issue in the Rule 26(f) report or disclose this destruction to Miller or the court (even after being ordered to produce the documents).  Instead, she forced Miller to file numerous motions and engage in a fruitless wild goose chase.

c. Disposing of computers used for company business

Two computers that Thompson used for company business no longer exist. Thompson swore in her affidavit dated November 5, 2018 (ECF No. 170) that the company computer she used from 2011 to 2015 contracted a virus and was donated to Goodwill in September 2015, prior to the commencement of litigation in December 2015. The special master found she was not under a duty to preserve that computer at the time of its disposal. There is no evidence that QuickBooks, bank statements, tax returns, etc. were saved on that computer. Thompson avers that she used her daughter's Compaq computer for company business from September 2015 to December 2016 until it too allegedly malfunctioned and was disposed of to a recycler in June 2017.[3]

There are numerous problems with Thompson's explanation. She did not provide any documentation regarding the virus, malfunctions or donations/disposals. Thompson did not identify what computer she used between June 2015 and September 2015. She claimed that she began using her daughter's computer in September 2015, but her daughter submitted an affidavit stating that the computer started giving her problems a year earlier, in 2014. (ECF No. 171).

The special master found Thompson was under a duty to preserve her daughter's Compaq computer, on which she conducted Native Link business; her explanation of the disposal of that computer was "untenable"; her disposal of the computers should have been disclosed at the Rule 26(f) conference and in the Rule 26(f) report; and Miller should not have had to file several motions and take depositions to find out that both computers had not been preserved.

d. Failing to produce all relevant QuickBooks documents as ordered

Thompson failed to preserve and produce complete QuickBooks financial records for the company. In an effort to comply with the court's order, defense counsel (not Thompson)

---

[3] Miller alleges that Thompson used this computer long after it was supposedly discarded and used a desktop version of QuickBooks, but did not provide the supporting deposition testimony to the special master or the court.

subpoenaed Nate Riggan ("Riggan"), the company's outside accountant, and produced an "accountant's copy" of the QuickBooks files. Unfortunately, they do not include records for 2012 or records after June 2015. Miller maintains that some of the information from Riggan's copy does not match other reports he has.

### e. Failing to produce all tax returns as ordered

Thompson and Nolan contended that NL Construction had not filed tax returns since 2013. This was false. Riggan produced a tax return for 2014, which showed that a $250,000 loan from Nolan to NL Construction actually went to Native Link, LLC. Miller contends that the NL Construction business continued until 2016, and he never received the 2015 or 2016 tax returns.

### f. Failing to produce all meeting minutes as ordered

Thompson failed to maintain, preserve and produce board meeting minutes. Of particular relevance are minutes at which a $250,000 loan was discussed and minutes at which she was elected the managing member of Native Link.

The special master, after considering the record before her, found that Thompson violated the court's orders and acted in a willful and dilatory manner by failing to notify the court and Miller that she did not preserve the Compaq computer. At the hearing, Thompson's attorney admitted that she violated the court's discovery orders.

The special master recommended that the expenses associated with obtaining documents and deposition testimony from Riggan and Thompson should be awarded to Miller. The court previously ordered that documents not produced cannot be used by defendants at trial (ECF No. 165). The special master recommended that two adverse inference sanctions be imposed: (1) that QuickBooks documents not produced by Thompson would have been detrimental to her

positions in this case; and (2) that meeting minutes Thompson failed to produce would be unfavorable to her and to Nolan.

3. Nolan

Nolan is one of the members and owners of NL Construction. He did not respond to any of the court's orders compelling discovery. He did not produce documents, as ordered. He did not submit an affidavit, as ordered, even though Morris reported that certain devices were no longer in his custody (Minute Entry, October 31, 2018). He provided no information about his Native Link email, any efforts to locate company emails or identify the email accounts which he used to conduct Native Link business, company minutes, financials, loans or other documents. In sum, the special master found that Nolan completely ignored numerous court orders. At the hearing, counsel conceded that Nolan violated the court's orders.

The special master recommended that because of Nolan's failure to respond to the court's Orders, failure to submit affidavits, and failure to produce documents, a default judgment should be entered against Nolan.

4. Summary of defendants' egregious misconduct

To summarize some of defendants' most egregious misconduct: (1) after the court's June 6, 2018 Order, Walk, Thompson and Nolan collaborated to fabricate a document, which Thompson signed and back-dated, which purported to be the minutes of a key meeting from 2012, and produced it to Miller without disclosing that the document was created on June 26, 2018; (2) Walk was dilatory in responding to discovery requests, requiring Miller to file multiple motions; (3) Thompson waited until October 24, 2018, to advise Miller and the court that email records and devices on which ESI was stored and that belonged to or were used by her were no longer in her custody or were destroyed, and forced Miller to go on a futile, wild goose chase; (4)

the laptop computer belonging to Thompson's daughter, which Thompson used for Native Link company business purposes until on or about December 2016, was given away in June 2017, long after Thompson's duty to preserve the ESI stored on it was clear; (5) Thompson allowed a vendor to terminate the nativelink.net email accounts for non-payment; (6) Thompson failed to produce all emails for the companies from May 2012-December 31, 2016, as required by the June 6, 2018 order (only a handful of emails were produced from October 23, 2014 to December 31, 2016); (7) Thompson failed to produce a complete set of minutes, QuickBooks files and banking records for the company, as required by the June 6, 2018 order; (8) Thompson failed to produce all tax returns, as required by the June 6, 2018 order; and (9) Nolan refused to comply with the court's discovery orders.

Standard of Review

Review of a special master's R&R is governed by Federal Rule of Civil Procedure 53(f). The court reviews the special master's findings of fact and conclusions of law *de novo*. Fed. R. Civ. P. 53(f). The court may adopt, modify, or reject wholly or in part the report and recommendation. Fed. R. Civ. P. 53(f). *See Cole's Wexford Hotel, Inc. v. Highmark Inc*., 209 F. Supp. 3d 810, 817 (W.D. Pa. 2016), on reconsideration sub nom. *Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc.*, No. CV 10-1609, 2017 WL 432947 (W.D. Pa. Feb. 1, 2017).

In this case, the parties received a hearing and opportunity to be heard, as provided by Rule 53(f)(1). Miller correctly pointed out that defendants' objections were untimely filed. The objections were filed a week after the deadline set by the court. Even when no timely objections are filed, "the court should, as a matter of good practice, satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Snider v. Pa. Dept. of*

*Corrections*, No. 15-951, 2016 WL 8730534 (M.D. Pa. Sept. 30, 2016) (discussing review of a magistrate judge's R&R).

<u>Analysis</u>

District courts must review objections to a R&R de novo unless the objections are "not timely or not specific." *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). In this case, because no timely objections were filed, the court need only satisfy itself that there is no clear error on the face of the special master's R&R. *See Snider*, 2016 WL 8730534 at *3. Nonetheless, the court will exercise its discretion to consider the objections, which do not dispute the underlying facts but only the kind of sanctions recommended by the special master.

There are several subsections of Federal Rule of Civil Procedure 37 which are implicated by defendants' misconduct in this matter: Rule 37(b)(2)(A) and (C), 37(e)(1) and (2), and 37(f). The application of each rule will be discussed below.

Rule 37 provides, in relevant part:

(b)(2) **Sanctions Sought in the District Where the Action Is Pending**.

(A) *For Not Obeying a Discovery Order*. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

　　(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
　　(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
　　(iii) striking pleadings in whole or in part;
　　(iv) staying further proceedings until the order is obeyed;
　　(v) dismissing the action or proceeding in whole or in part;
　　(vi) rendering a default judgment against the disobedient party; or
　　(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

[. . .]

(C) *Payment of Expenses*. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

[. . .]

(e) **Failure to Preserve Electronically Stored Information**. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
    (A) presume that the lost information was unfavorable to the party;
    (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
    (C) dismiss the action or enter a default judgment.

(f) **Failure to Participate in Framing a Discovery Plan**. If a party or its attorney fails to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f), the court may, after giving an opportunity to be heard, require that party or attorney to pay to any other party the reasonable expenses, including attorney's fees, caused by the failure.

A.  Rule 37(b)(2)

In this case, the most troubling misconduct is defendants' failure to comply with the court's discovery orders, as summarized above and conceded at the hearing.[4]  Walk conceded that the R&R was appropriate and counsel for Thompson and Nolan admitted that his clients violated the court's discovery orders.[5]  Sanctions are authorized, therefore, under Federal Rule of Civil Procedure 37(b)(2).

---

[4]On its face, Federal Rule of Civil Procedure 37(b) presupposes an existing discovery order of court that defendants violated.  Some of Thompson's misconduct (in failing to preserve documents and her computer) occurred prior to any discovery order, but is still sanctionable under Rule 37(e), as discussed below.
[5] Counsel for Thompson and Nolan disputed the conclusions of the special master about intentional failure to comply with the court's orders and the prejudice to Miller caused by their failures to comply with the court's orders.

In applying Rule 37(b), district courts have "very broad discretion" to use sanctions where necessary to ensure compliance with pretrial orders; this facilitates the "expeditious and sound management of the preparation of cases for trial." *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 242 (3d Cir. 2007) (involving objections to a special master's R&R about Rule 16(f) sanctions). Although Rule 37(b) "provides a 'veritable arsenal of sanctions' to deter and rectify discovery violations," it is not equivalent to carte blanche; the court's discretion is limited in two ways: (1) any sanction must be just; and (2) the sanction must be specifically related to the particular claim which was at issue in the order to provide discovery. *Clientron Corp. v. Devon IT, Inc*., 894 F.3d 568, 580–82 (3d Cir. 2018) (citations omitted) (rejecting veil piercing sanction not authorized by substantive law). In other words, the "unproduced discovery [must] be sufficiently material to the administration of due process to support a presumption that the failure to produce constituted an admission by the offending party that its asserted claim or defense lacked merit." *Id*. In *Clientron*, the court of appeals cautioned: "nothing in this opinion should be read to cast doubt on the District Court's authority to levy a sanction given the gravity of the misconduct, nor should the opinion be read to take issue with the severity of the sanction originally imposed." 894 F.3d at 582.

In *Deitrick v. Costa*, No. 4:06-CV-1556, 2019 WL 450216 (M.D. Pa. Feb. 5, 2019), the court succinctly summarized the legal rules governing the imposition of sanctions on a party who failed to comply with a court's discovery order:

> Rule 37(b)(2) of the Federal Rules of Civil Procedure authorizes the imposition of sanctions against a party who fails to comply with a discovery order. *DiGregorio v. First Rediscount Corp*., 506 F.2d 781, 788 (3d Cir. 1974). "The choice of an appropriate sanction generally is committed to the sound discretion of the district court." *DiGregorio v. First Rediscount Corp*., 506 F.2d at 788 (citation omitted). "Sanctions for violation of Rule 37(b)(2)(A) include orders by the court ranging from designating that certain facts be admitted, to prohibiting the disobedient party from supporting or opposing designated claims or defenses, to monetary damages or even the dismissal of all or part of the action." *Craig v. Kelchner*, No. 3:07-CV-1157, 2010 WL 528331 (M.D. Pa. Feb. 11, 2010) (citing

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii) ). In addition, Fed. R. Civ. P. 37(b)(2)(C) provides for the sanction of reasonable expenses including attorney fees against a party failing to comply with an Order.

. . .

  In imposing sanctions, the sanction must be specifically related to the particular claim or claims at issue in the Order to provide discovery violated by the offending party. Furthermore, the Court must "assess the culpability of the offending party and the prejudice to the party seeking sanctions" in determining the appropriate sanction. *Craig v. Kelchner*, Civil No. 3:07-CV-1157, 2010 WL 528331 (M.D. Pa. 2010) (citation omitted).

*Id.* at *5. Rule 37(b)(2)(C) directs that instead of or in addition to the sanctions described above, the court "must" order the disobedient party, the advising attorney, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.[6] *In re Atomica Design Grp., Inc.*, No. 12-17235, 591 B.R. 217, 233 (Bankr. E.D. Pa. 2018). Rule 37(b)(2)(C) does not require a finding of bad faith or intentional wrongdoing to justify awarding sanctions, "especially if the deficient discovery severely impacted the party seeking discovery." *Id.* Where withheld documents are clearly relevant and discoverable, parties are not substantially justified in failing to disclose them. *Id.*

  As explained in *Clientron*, federal courts can invoke their inherent authority to impose sanctions even if procedural rules exist which sanction the same conduct. 894 F.3d at 577 n.4. The "preferred course, however, is that when statutory or rules-based sanctions are entirely adequate, they should be invoked, rather than the inherent power." *Id.* To repeat, Rule 37(b) provides "a veritable arsenal" of severe sanctions, including entry of default judgment and treating the failure to obey a court's order as contempt of court. *Tracinda*, 502 F.3d at 242.

---

[6] Because Miller is acting pro se, attorney fees are not an issue.

B.  Rule 37(e)(1) and (2)

Rule 37(e) provides sanctions for the failure to preserve ESI that should have been preserved in the anticipation or conduct of litigation.  To be sanctionable, the ESI must be lost because a party failed to take reasonable steps to preserve it; and the ESI must not be able to be restored or replaced through additional discovery.

There are two levels of sanctions under the Rule.  Pursuant to Rule 37(e)(1), upon finding "prejudice" to another party from loss of the information, the court may order measures no greater than necessary to cure the prejudice.  Before imposing the more severe sanctions available under Rule 37(e)(2), the court must make a finding that the party acted with the intent to deprive another party of the information's use in the litigation.   In other words, "Subsection (e)(1) is thus concerned with a party's negligent or grossly negligent failure to preserve ESI, whereas subsection (e)(2) is directed to instances where a party intentionally destroyed or lost ESI."  *CIGNEX Datamatics, Inc. v. Lam Research Corp.*, No. CV 17-320 (MN), 2019 WL 1118099, at *2 (D. Del. Mar. 11, 2019); Fed. R. Civ. P. 37(e)(2) Advisory Committee Notes to 2015 Amendment ("The better rule for the negligent or grossly negligent loss of [ESI] is to preserve a broad range of measures to cure prejudice caused by its loss [i.e., (e)(1) ], but to limit the most severe measures to instances of intentional loss or destruction [i.e., (e)(2) ].").

C.  Rule 37(f)

Federal Rule of Civil Procedure 37(f) imposes a duty on parties and attorneys to participate "in good faith" in developing and submitting a proposed discovery plan and Rule 26(f) report.  If they fail to do so, the court may require that party or attorney to pay to the other side the reasonable expenses caused by that failure.

The pro se plaintiff in this case did not specifically cite Rule 37(f) as a basis for sanctions. The special master did not cite Rule 37(f), but made specific findings that the destruction of documents and computers should have been disclosed to plaintiff and the court in the parties' Rule 26(f) report and the court's initial case management conference. ECF No. 183 at 15-16, 19-20. The special master found that Walk and Thompson forced Miller and the court to waste time and resources on multiple motions to obtain discovery. Nolan failed to participate in the discovery process at all. Thompson failed to notify Miller or the court of the disposals of computers and loss of emails and instead let Miller undertake a wild goose chase, knowing that he would come up empty-handed. *Id.* at 16. Defendants were given an opportunity to be heard on these issues, but did not challenge the special master's factual findings. The court finds that Walk, Thompson and Nolan did not act in good faith in developing a discovery plan. To be clear, the violations of Rule 37(f) support the sanctions of the award of expenses recommended by the special master. The court, however, is not imposing any additional sanctions on this basis.

### D. Imposition of Sanctions

The discovery at issue was clearly relevant to the claims in this case and the court ordered Walk, Thompson and Nolan to produce it. Miller's theory of the case, as explained at the hearing, is that defendants held a meeting to take his share of NL Construction; after which they used the assets of NL Construction to secure a loan which they otherwise could not have obtained without his signature. The fabricated, back-dated minutes purported to address directly Miller's claim to one-third ownership of NL Construction. The financial records that were not produced are essential to: (1) determine Miller's damages; and (2) enable him to show that other transactions (such as recording invoices as loans) were fraudulent. Defendants' lengthy efforts to stall, delay and fail to preserve information (and their coordinated effort to create and produce

to Miller back-dated meeting minutes five years after the purported meeting) support a presumption that their failure to produce discovery constituted an admission by the offending party that their defenses lack merit. *See Clientron*, 894 F.3d at 581. Miller was clearly prejudiced by defendants' failure to produce discovery and comply with the court's orders. The recommended sanctions specifically relate to the claims at issue in the orders to produce discovery. The court will address the culpability of each defendant to evaluate whether the special master's recommended sanctions are "just."

1. Patrick Nolan

The special master found that Nolan ignored court orders in bad faith and recommended entry of default judgment against him. Nolan's objections to the R&R were filed by the same counsel who asked to withdraw his representation because Nolan was uncooperative concerning compliance with the court's ESI discovery order (ECF No. 172). At the hearing, counsel admitted that Nolan violated this court's orders.

Counsel argued that the violations were due to negligence and carelessness rather than an intent to defy the court's authority and that entry of default judgment against Nolan is too severe.

The court does not agree. The order entered contemporaneously with this opinion will be the court's sixth order regarding defendants' discovery obligations. Previously, the court: (1) denied plaintiff's first motion to compel without prejudice and granted defendants an extension of time to complete discovery (ECF No. 139)[7]; (2) granted plaintiff's second motion to compel and ordered production of documents (ECF No. 146); (3) granted in part Miller's first motion for sanctions (ECF No. 165); (4) ordered defendants' counsel to conduct a forensic investigation into gmail accounts and devices (Minute Entry, October 24, 2018); and (5) directed defendants to

---

[7] In obtaining this extension, defendants failed to disclose their failures to preserve information.

provide sworn affidavits (Minute Entry, October 31, 2018). Nolan ignored the court's orders discussed in 2, 4 and 5, which compelled him to respond to discovery and to provide an affidavit.

In addition, Nolan contends that default judgment is too harsh a sanction because: (1) Miller was not prejudiced in light of the extensive discovery produced and existence of affirmative defenses[8]; and (2) Nolan was merely a passive investor with Native Link. As explained above, the court determined that Miller was prejudiced by Nolan's conduct. The rationalization about being a "passive investor" minimizes Nolan's status as one-third owner/member and as a named defendant in this case. If he had no responsive documents, he could have said so – but, he did not. Nolan had a duty to participate in discovery.

Nolan never represented that he fully complied with his discovery obligations; he argues merely that he produced 300 pages of email (at some unspecified time) – a paltry amount compared to the 10,000 emails produced by Walk. Morris argued on behalf of Nolan that there was not a two-year gap in email correspondence because he produced six emails during that time period and the company was being liquidated. The court rejects this explanation as unworthy of credence. Nolan stated that he used his [nolanenterprise@gmail.com](mailto:nolanenterprise@gmail.com) account to conduct Native Link business, but offered no details regarding his preservation and production of all relevant emails from that account. Nolan did not submit an affidavit, as ordered by the court. It is obvious, from Nolan's participation in the telephone conference in June 2018 that led to fabrication of the back-dated meeting minutes, that Nolan was aware of the court's discovery orders in this case and was actively involved in the litigation issues.

District courts must conduct a "*Poulis* analysis" before imposing sanctions that are tantamount to default judgment because they inevitably lead to liability for one party. *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013). The *Poulis* factors are: "(1) the extent of

---

[8] At this stage of the case, the allegations in the complaint are construed in the light most favorable to plaintiff. The court recently issued a summary judgment briefing schedule.

the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). Each of these factors supports entry of a default against Nolan. His failure to cooperate in discovery, even with his own attorney, is his personal responsibility; Miller was prejudiced; Nolan displayed a history of dilatoriness; his conduct was in bad faith; lesser sanctions were ordered by the court in granting Miller's two motions to compel and first motion for sanctions, but without success; and Nolan has not established any meritorious defenses.

Nolan's repeated failures to produce discovery or comply with the court's orders are inexcusable. Entry of a default under Rule 37(b)(2)(A)(vi) for repeated failures to comply with court-ordered discovery, although an extreme sanction, is entirely just and appropriate. *National Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) ("the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."); *Styer v. Frito-Lay, Inc.*, No. 1:13-CV-833, 2015 WL 1243423, at *3 (M.D. Pa. Mar. 18, 2015) (Rule 37(b)(2) specifically provides for sanctions including entry of a default judgment); *Organik Kimya, San. v. Tic. A.S.*, 848 F.3d 994, 1002 (Fed. Cir. 2017) (affirming entry of default judgment against party that destroyed documents despite the ALJ's explicit orders to conserve the documents).

To be precise, the court, in accordance with its authority under Rule 37(b)(2)(A)(vi), will direct the clerk of court to enter default against Nolan pursuant to Federal Rule of Civil

Procedure 55(a) and will set a hearing to determine the amount of the default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2).

2. Melinda Thompson

The special master found that Thompson violated court orders and was dilatory and acted in willful bad faith, warranting sanctions under Rule 37(b)(2) and 37(e). The special master found that as the managing member of Native Link, Thompson allowed corporate email records and computers to be destroyed, did not disclose the loss of information to plaintiff or the court and instead forced Miller to engage in a wild goose chase, and offered no valid excuses for her conduct. The special master recommended that the expenses associated with obtaining documents and deposition testimony from Riggan and Thompson should be awarded to plaintiff under Rule 37(b)(2), as well as adverse inference sanctions under Rule 37(e) that QuickBooks documents and meeting minutes not produced by Thompson would have been detrimental to her positions in this case.

Thompson conclusorily alleged that she was "cooperative" and pointed to 1000 pages of emails she did produce (a suspiciously small amount compared to the 10,000 emails produced by Walk, who had a far lesser role in the companies), including a handful during the alleged two-year gap when Native Link was being liquidated. Counsel for Thompson argued that the recommended sanctions were too harsh given the lack of proof that she intentionally lost or destroyed information, and the alleged lack of prejudice to plaintiff.

Thompson did not directly refute any of the special master's specific findings about her failures to comply with court orders or to preserve ESI and comply with her discovery obligations. Counsel admitted that Thompson violated the court's discovery orders. Sanctions under both Rule 37(b) and 37(e) are, therefore, justified.

Pursuant to Rule 37(e)(1), the court finds that ESI should have been preserved by Thompson in anticipation of this litigation and during the conduct of this case. The ESI was lost because Thompson failed to take reasonable steps to preserve ESI. The ESI, despite efforts to retrieve it from other sources such as Riggan and the corporate attorney, cannot be restored or replaced. The court finds that Miller was clearly prejudiced by Thompson's failure to preserve the ESI. The missing meeting minutes go directly to his claim of ownership in the corporation. The missing financial records are critical to determining his damages, as explained above. The measures recommended by the special master are no greater than necessary to cure the prejudice to Miller.

Pursuant to Rule 37(e)(2), the court finds that Thompson acted in bad faith with intent to deprive Miller of the information's use in this litigation. A finding of "intent to deprive" may be based on circumstantial evidence. *Folino v. Hines*, No. CV 17-1584, 2018 WL 5982448, at *3 (W.D. Pa. Nov. 14, 2018) (citing *Goldrich v. City of Jersey City*, No. 15-885, 2018 WL 4489674, at *1–2 (D.N.J. Sept. 19, 2018)). In this case, Thompson did not disclose the missing computers or documents voluntarily, but instead stalled, delayed and forced Miller to engage in a wild goose chase. She, with Walk and Nolan, fabricated and back-dated meeting minutes and attempted to pass them off as authentic. She knowingly allowed Garrant's services to lapse for non-payment. Her explanation of the donation or destruction of her computer and her daughter's computer was not believable. Thompson gave no excuse for letting the Native Link email files expire for nonpayment; coordinating the fabrication of back-dated meeting minutes in response to the court's June 6, 2018 Order; not preventing the disposal of the ESI stored on her daughter's computer; and not disclosing the missing documents and devices immediately to Miller and the court. In sum, the court concludes that Thompson engaged in a concerted effort to deprive Miller of access to the ESI.

The special master's proposed sanctions are just and appropriate. Thompson caused Miller to incur unnecessary costs, for which she must reimburse him under Rule 37(b)(2)(C) and (e)(1). The adverse inference instruction sanctions are fully justified under Rule 37(e)(2) because the missing documents prejudice Miller's ability to prove his case and the court finds Thompson acted with the intent to deprive Miller of their use in this case. Thompson will still have an opportunity to otherwise defend the case.

3. Mitchel Paul Walk

Walk did not object to the R&R. The sanctions recommended by the special master (awarding the expenses for plaintiff to depose him and to produce a digital copy of his hard drive) are reasonable, and are adopted by the court as unopposed.

4. Allocation of Expenses

The special master recommended that expenses for her services, including her fees and other expenses, be assessed 40% to Thompson; 40% to Nolan; 20% to Walk; and 0% to plaintiff. No objections were made to this split. *Nara v. Frank*, 488 F.3d 187, 194 (3d Cir. 2007), as amended (June 12, 2007) ("failing to timely object to an R & R in a civil proceeding may result in forfeiture of de novo review at the district court level"). The court will accept this allocation as reasonable. *See* Federal Rule of Civil Procedure 53(g)(3) (court must allocate payment for the special master's compensation among the parties after considering the amount in controversy, parties' means, and extent to which parties are responsible for the reference to a master). Here, defendants' conduct was clearly the reason for reference to the special master, there is a significant amount in controversy (Miller seeks compensatory damages in excess of $2,000,000

plus punitive damages.  ECF No. 82) and there is no evidence that any defendant lacks the means to pay the assessment.

5.   Admission of the Post-Dated Meeting Minutes

Instead of excluding the fabricated, post-dated meeting minutes, the special master suggested that plaintiff be allowed to cross-examine defendants at trial about that document (and presumably its metadata) (ECF No. 183, Ex. A, B).  The meeting minutes are admittedly fabricated and the metadata is not relevant to any of the claims or defenses in this case.  These documents, therefore, will not be admitted as substantive evidence by defendants for consideration by the jury in deciding the case.  The court will take under advisement the issue about whether plaintiff may admit that document for purposes of cross-examinating a defendant about the creation of the document so that the jury can evaluate each defendant's credibility.  *See Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 495 (7th Cir. 1998) (admitting evidence about creation of a false document on the eve of litigation).

Conclusion

For the reasons set forth above, Miller's second motion for sanctions will be granted. Although no timely objections were filed to the special master's R&R, the court nevertheless considered the objections and conducted a thorough evaluation to confirm that the recommended sanctions were appropriate. The special master's R&R will be adopted as the opinion of the court, as modified and supplemented herein. An appropriate order follows.


May 17, 2019                                        By the Court:

                                                   /s/ JOY FLOWERS CONTI
                                                   Joy Flowers Conti
                                                   Senior United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**MATTHEW DAVID MILLER**,　　　　)
　　　　　　　　　　　　　　　　　　)　　Civil Action No. 15-1605
　　　　　　　PLAINTIFF,　　　　　　)
　　　　　　　　　　　　　　　　　　)
**V.**　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
**THOMPSON THOMPSON-WALK,**　　)
**MITCHELL PAUL WALK,**　　　　　)
AND **PATRICK L. NOLAN**,　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　DEFENDANTS.　　　　　)
　　　　　　　　　　　　　　　　　　)

## ORDER

AND NOW, this 17th day of May, 2019, it is hereby ordered that for the reasons set forth in the memorandum opinion, plaintiff's second motion for sanctions (ECF No. 174) is GRANTED;　the special master's Report and Recommendation (ECF No. 183) is adopted as the opinion of the court, as modified and supplemented in the opinion; and the objections to the R&R filed by defendants Patrick L. Nolan and Melinda Thompson (ECF Nos. 185, 186) are DENIED.

IT IS FURTHER ORDERED that on or before May 31, 2019, plaintiff Matthew Miller shall file an affidavit itemizing the expenses and costs he incurred for all activities identified as reimbursable by the special master and court.  Defendants may file objections to the claimed expenses and costs on or before June 7, 2019.

IT IS FURTHER ORDERED that on or before May 24, 2019, special master Susan Ardisson shall send to each defendant an invoice for her reasonable fees and expenses in this case and that on or before June 7, 2019, defendants shall pay their respective shares of the special master's fees and expenses (40% by Patrick L. Nolan, 40% by Melinda Thompson, and

20% by Mitchell Paul Walk) to Ardisson.  Failure of a defendant to pay his or her share of thoses fees and expenses shall be regarded as a violation of this order and further sanctions may be ordered.

IT IS FURTHER ORDERED that the clerk of court shall enter default against Patrick L. Nolan pursuant to Federal Rule of Civil Procedure 55(a), forthwith.

On July 9, 2019 at 10:00 a.m., the court will conduct a hearing to determine the amount of the default judgment against Patrick L. Nolan pursuant to Federal Rule of Civil Procedure 55(b)(2).

By the Court:

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Senior United States District Judge